IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00648-MEH

STACEY SMITH,

    Plaintiff,

v.

SPECIALIZED LOAN SERVICING, LLC,

    Defendant.

---

**ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant's Partial Motion to Dismiss Plaintiff's Failure to Provide Reasonable Accommodations Claim Pursuant to Fed. R. Civ. P. 12(b)(1) [filed May 6, 2015; docket #12]. The motion is fully briefed, and the Court finds that oral argument will not assist in the adjudication of the motion. Based on the record herein and for the reasons that follow, the Court **denies** Defendant's motion.

## BACKGROUND

### I.    Statement of Facts

The following are factual allegations made by the Plaintiff in her Complaint and offered by Defendant for jurisdictional analysis.

Plaintiff Stacey Smith is a 36 year-old female who has been diagnosed with Osteogenesis Imperfecta, which is a permanent condition she had at the time she was hired and throughout the course of her employment at issue in this case. Smith began work with Defendant Specialized Loan Servicing, LLC ("SLS") on June 25, 2012 as a CR Work Specialist I. SLS is a residential mortgage

loan servicing company based in Highlands Ranch, Colorado.

On June 23, 2012, Smith asked her supervisor, Josh Schaffer, to be given an inside corner desk, to be allowed to use an ergonomic keyboard and mouse, and to have a desk that fit her body because of her disability. Smith was given the inside corner desk but was denied the use of an ergonomic keyboard and mouse. Smith was told to use the equipment that came with the computer. Smith was required to bring in pillows to sit on, buy her own office supplies, and place her feet on reams of paper to make the desk and her working environment more accommodating to her disability. Accordingly, Smith worked in an environment that was much harder for her as compared to an average employee without the same disability.

In January 2013, as a "permanent" accommodation, Smith was allowed to work only eight-hour shifts and to begin work at 6:30 a.m. However, SLS did not abide by this accommodation when it required or requested that Smith work different or longer hours during the term of her employment, then wrote her up after her direct managers told her to work her regular hours.

During the course of her employment Smith complained to her manager and director that she felt harassed and discriminated against due to her disability. Following formal complaints against her supervisors, Smith was continually written up.

Numerous co-workers worked at the same performance level as Smith and were not treated in a discriminatory way but, instead, were promoted and given special project privileges.

Smith was subjected to derogatory comments by her supervisors, including when she was referred to as "short stuff," a "big fat baby," and a "little kid." These comments brought her to tears in front of her peers and subjected her to public ridicule.

As a result of her disability, Smith also requested an accommodation to be allowed to have

her phone set to "meeting status" because her stature was too short to see when she was receiving calls at her desk. After being given this accommodation, she was then written up for having too much "meeting status" time.

On December 13, 2013, following a write up meeting and near lunch time, Smith was asked to leave her access badge with her supervisor so that they could fix some problems she had been having with it. When Smith returned to the building following lunch, she was met by a security guard at her parking spot and told that she was no longer allowed into the building and would be called by SLS when she could return. The following day, on December 14, 2013, Smith received a letter from SLS stating that she was released from her employment.

On October 2, 2014, Smith filed a charge of discrimination with the Equal Employment Opportunity Commission. In answering on what bases the Smith suffered discrimination, Smith checked the boxes for "retaliation" and "disability," and listed the following under "particulars":

> I. Starting in or about 4/2013 and continuing I have been harassed, disciplined and finally terminated on or about 12/13/2013 from my position of Loan Modification Specialist.
>
> II. I believe that I have been discriminated against based on being disabled within the meaning of the Americans with Disabilities Act of 1990, as amended, and in retaliation for participating in a protected activity, inasmuch as:
>
> a. Starting in or about 4/2013 and continuing I was subjected to derogatory remarks about my disability. On or about 4/23/2013 I was written up for not making enough calls, whereas non-disabled employees were not disciplined. I requested to implement an action plan to assist me in performing my duties, but the plan was not implemented. After the write up, I notified HR of the harassment. but nothing was done.
>
> b. In or about 6/2013 1was placed under another manager. He subjected me to derogatory remarks about my disability and [I] told him that the remarks were inappropriate but he continued so I contacted HR and reported harassment and asked to be transferred to another manager. Again nothing was done and the transfer was denied.

3

> c. On or about 12/13/2013, I was terminated for not meeting goals, whereas other non-disabled team members not meeting production were [not] placed on an action plan.

Docket #16 at 1-2.

## II.   Procedural History

On March 30, 2015, Smith, through counsel, initiated this action by filing a Complaint pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA"). Docket #1. Smith alleges SLS subjected her to harassment and discriminatory discipline, failed to promote her, and terminated her employment (Claim One), and SLS failed to provide her reasonable accommodations (Claim Two). *Id.* at 6-8.

In response to the Complaint, SLS filed an answer to Claim One and the present motion to dismiss Claim Two arguing that the reasonable accommodations claim should be dismissed for failure to exhaust administrative remedies, because Smith failed to include facts supporting such claim in her EEOC charge. Smith counters that SLS and the EEOC had "clear notice" of the accommodations claims from the "language of the Plaintiff's charge and the information known to the EEOC during the course of [its] investigation prior to issuing the right to sue notice." SLS replies that the Plaintiff is not permitted to rely on information in her intake questionnaire or rebuttal statement to demonstrate exhaustion of administrative remedies.

## LEGAL STANDARDS

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are

courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). "A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Kennedy v. Lubar*, 273 F.3d 1293, 1302 (10th Cir. 2001) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear her claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion goes beyond the allegations contained in the Complaint to factually attack this Court's subject matter jurisdiction; thus, the Court will not presume the truthfulness of Plaintiff's allegations.

## **ANALYSIS**

"Under both Title VII and the ADA, exhaustion of administrative remedies is a prerequisite

5

to suit." *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012) (citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005); *MacKenzie v. City of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)). Further, administrative remedies generally must be exhausted as to each discrete instance of discrimination or retaliation. *Id.* (citing *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194-95 (10th Cir. 2004)). The purpose behind the requirement of exhausting a claim with the EEOC is two-fold: "protect[ing] employers by giving them notice of the discrimination claims being brought against them, [and] providing the EEOC with an opportunity to conciliate the claim." *Foster*, 365 F.3d at 1195.

Here, Smith marked the box for "discrimination based on ... disability" on the EEOC charge form. Docket #16 at 1. The form contains no box for "reasonable accommodation," and she did not mark the box titled "other" or otherwise use the term "reasonable accommodation" within this section of the charge. The Tenth Circuit follows a rule of liberally construing charges of discrimination filed before the EEOC, *Jones v. United Parcel Servs., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007), and the presumption that a charging party is not asserting particular claims if a box is not checked may be rebutted if the conduct alleged in the complaint reasonably would be expected to fall within the scope of the charge. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998). In fact, "EEOC regulations explicitly state that 'a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Foster*, 365 F.3d at 1195 (quoting 29 C.F.R. § 1601.12(b)).

This Court must, therefore, consider whether Plaintiff's information provided to the EEOC alleges conduct that reasonably would be expected to raise a failure to accommodate claim. "A

plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones*, 502 F.3d at 1186 (quoting *MacKenzie*, 414 F.3d at 1274). With respect to the narrative portion of the charge, Smith stated, "I requested to implement an action plan to assist me in performing my duties, but the plan was not implemented." Docket #16 at 1.[1]

Smith contends that this statement suffices to put SLS and the EEOC on notice that Smith had requested reasonable accommodations from SLS. SLS counters that the "action plan" did not involve the specific accommodations Smith alleged in the Complaint – different shift/hours, ergonomic desk, and setting phone to "meeting status" – which Smith claims she requested and was denied. The Court concludes these arguments raise a material issue of fact that precludes dismissing Smith's claim at this stage of the litigation.

Nothing in the documents provided by the parties conclusively describes the "action plan" to which Smith refers in her EEOC charge. The only document in which the "action plan" is referred is an email exchange between Smith and an EEOC representative, who requested additional information from Smith, apparently in furtherance of his investigation. *See* docket #17-1 at 11-15. In response to a request for more information concerning SLS's report that "the action plan was given, but you were not discharged," Smith stated,

> On 12/13/13 I was not given an action plan. I was given a write up as they explained it to me in the meeting. The write up did not include a plan of how they wanted me to clear up or how they would guide me in clearing up the items mentioned in the write up. The write up did have an action plan section but it stated I had already been given tools to work with. I had not been given anything before during or after the

---

[1] In light of the Court's finding below, it need not resolve, for purposes of the present motion, whether any information other than that provided in the formal charge of discrimination may be considered in analyzing a "failure to exhaust" defense.

meeting.

*Id.* at 12. Smith continued in that email to discuss the "write up" and described the accommodations SLS allegedly promised to provide but reneged, including modifying her work schedule and setting her phone to "meeting status." *Id.* at 12-14.

Again, this information does not conclusively describe the "action plan" to which Plaintiff referred in her EEOC charge; however, this is the only factual information currently before the Court concerning the issue and, with it, a reasonable juror could find that Smith's requested action plan included the accommodations Smith allegedly requested from SLS, as listed in her Complaint. *See Jones v. Denver Post*, 203 F.3d 748, 755 (10th Cir. 2000) ("The suit may include allegations of discrimination reasonably related to the allegations listed in the administrative charge ..."). In other words, there is a factual issue as to whether Smith's claim in federal court can be reasonably expected to follow the charge of discrimination submitted to the EEOC. *See Jones v. UPS*, 502 F.3d at 1186. Accordingly, the Court finds it would be improper at this stage of the litigation to dismiss Smith's reasonable accommodations claim for failure to exhaust.

## **CONCLUSION**

Plaintiff Stacey Smith has demonstrated the existence of a factual issue as to whether she exhausted her administrative remedies for her second claim for failure to accommodate under the ADA, which cannot be resolved on the information provided to the Court. Accordingly, the Court **DENIES** Defendant's Partial Motion to Dismiss Plaintiff's Failure to Provide Reasonable Accommodations Claim Pursuant to Fed. R. Civ. P. 12(b)(1) [filed May 6, 2015; docket #12].

ORDERED this 19th day of June, 2015, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge